IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 24-cv-01088-CNS

RUDOLPH PUANA,

    Petitioner,

v.

J. F. WILLIAMS, Warden FCI-Florence,

    Respondent.

---

**ORDER GRANTING APPLICATION FOR WRIT OF HABEAS CORPUS**

---

    Petitioner Rudolph Puana is a convicted and sentenced federal prisoner currently incarcerated at the Englewood Federal Correctional Institution (FCI Englewood) in Littleton, Colorado. Mr. Puana brings this § 2241 habeas corpus action *pro se* to challenge the calculation of his sentence by the Bureau of Prisons (BOP).[1] Specifically, he contends that he began serving his federal sentence on September 12, 2022, and started earning time credits available under the First Step Act (FSA) from that date. The BOP disagrees, arguing that Mr. Puana did not begin to earn time credits under the FSA until after he arrived at his designated facility, which was July 14, 2023. The Court concludes that Mr. Puana was eligible to earn time credits under the FSA as of September 12, 2022, and the

---

[1] Because Mr. Puana proceeds *pro se*, the Court liberally construes his filings, but it will not act as his advocate. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

1

BOP must recalculate and apply any earned time credits applicable to his sentence. As discussed below, the habeas corpus application will therefore be granted in part.

## I.  BACKGROUND

On September 12, 2022, the United States District Court for the District of Hawaii sentenced Mr. Puana to 90 months in prison. *See United States v. Puana*, Case No. 19-cr-00015-JMS-WRP, ECF No. 372 (D. Haw. Sep. 12, 2022). The same day he began serving his sentence at the Federal Detention Center in Honolulu, Hawaii (FDC Honolulu). While at FDC Honolulu, Mr. Puana was in "holdover status," until he was transferred to his "designated facility," FCI Englewood, on July 14, 2023. This case lives between the two dates.

According to the BOP, Mr. Puana did not become eligible for earned time credit until July 14, 2023, when he arrived at his designated facility. After being sentenced on September 12, 2022, Mr. Puana remained in "holdover status" at FDC Honolulu until arriving at FCI Englewood on July 14, 2023. Once at FCI Englewood, he received his first Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) assessment on July 23, 2023, where he was deemed to be at a low risk of recidivism. ECF No. 15-1, Decl. of P. Justice at 13, ¶ 32. On July 25, 2023, the BOP completed Mr. Puana's individual needs assessment and initial classification, identifying evidence-based recidivism reduction (EBRR) programming and productive activities (PAs) for his criminogenic needs. *Id.*, ¶ 33. Although his first risk and needs assessment was not completed until July 25, 2023, the BOP backdated Mr. Puana's earning status to July 14,

2

2023, so that he became eligible to earn FSA credits on the date he arrived at FCI Englewood. *Id.* at 13–14, ¶ 34.

As the BOP sees it, Mr. Puana's first assessment period ran from July 14, 2023, to August 11, 2023, in which he was eligible to earn 10 days of time credit for every 30 days of successful participation in EBRR programming and PAs. *Id.* at 14, ¶ 34. The second assessment period ran from August 11, 2023, to February 7, 2024, in which he was again eligible to earn 10 days of time credit for every 30 days of successful participation in EBRR programming and PAs. *Id.* Mr. Puana's third assessment period began on February 7, 2024. And because he had completed two prior consecutive assessments with minimum or low risk scores, he became eligible, as of February 7, 2024, to earn an additional five days of time credit for every 30 days of successful participation in EBRR programming and PAs. *Id.*, ¶ 35. Based on the foregoing, the BOP finds that, as of June 30, 2024, Mr. Puana accrued 352 program days and 135 days of earned time credit under the FSA. *Id.* at 14–15, ¶¶ 37–41.

Mr. Puana sees things differently. According to him, he became eligible to earn time credits under the FSA on the date his sentence commenced in accordance with 18 U.S.C. § 3585(a), which was September 12, 2022. ECF No. 1 at 4. Mr. Puana alleges that "[c]urrent policy mandates that all inmates should receive their first PATTERN score assessment within twenty eight days of starting their sentence of incarceration." *Id.* Since he became eligible for earned time credits as of the date his sentence commenced, Mr. Puana contends he should have completed two consecutive assessments with minimum

3

PATTERN scores by April 2023, making him eligible, because of his minimum and low risk scores, for the additional five days of earned time as of that date. *Id.* Accordingly, Mr. Puana requests the BOP to "retroactively calculate" the earned time credits for completed programming starting with the date he was sentenced, September 12, 2022, and to grant him additional time credits based on his PATTERN assessments and successful participation in EBRR programing and PAs. *Id.*

The parties have fully briefed their respective positions. ECF Nos. 15, 16, 19. The Court will set forth the applicable legal standards and then address whether habeas relief is available.

## II. LEGAL STANDARDS

### A. Statutory and Regulatory Framework

On December 21, 2018, Congress enacted the FSA, requiring the BOP to create a "risk and needs assessment system" concerning recidivism and recidivism reduction for federal prisoners. 18 U.S.C. § 3632(a). The FSA mandates "incentives and rewards for prisoners to participate in and complete evidence-based recidivism" programs. *Id.* § 3632(d). One of the incentives is earned time credits. The FSA provides when earned time credits can, and cannot, be earned:

> **(4) Time credits.**—
>
> **(A) In general.**--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> **(i)** A prisoner shall earn 10 days of time credits for every 30

> days of successful participation in evidence-based recidivism reduction programming or productive activities.
> **(ii)** A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> **(B) Availability.**--A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—
>
> **(i)** prior to the date of enactment of this subchapter; or
> **(ii)** during official detention prior to the date that the prisoner's sentence commences under section 3585(a).
>
> **(C) Application of time credits toward prerelease custody or supervised release.**--Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(A)–(C). The FSA text thus makes clear that prisoners "shall" earn time credits, at the statutory rate, for all qualified programs in which they successfully complete, except (1) for the programs in which they participated while imprisoned before the FSA was enacted, or (2) for programs completed in detention before the date their sentence commenced under § 3585(a). The statute also makes prisoners ineligible based on convictions for certain crimes and where the prisoner is subject to a final order of removal. 18 U.S.C. § 3632(d)(4)(D)–(E).

On January 19, 2022, the BOP adopted regulations regarding the earning and application of FSA earned time credits. 28 C.F.R. § 523.40(a). BOP regulations provide

5

that "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences **(the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)**." 28 C.F.R. § 523.42(a) (emphasis added). The regulations also provide that an inmate must be "successfully participating" in designated programming in order to earn FSA credits. *Id.* § 523.41(c)(1). "'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." *Id.* § 523.41(c)(2). Where the BOP temporarily suspends prison operations or itself interrupts programming, the inmate is still considered to be successfully participating. *Id.* § 523.41(c)(3).

The regulations further offer a non-exclusive list of five circumstances where an inmate is "generally" not considered to be "successfully participating." *See* 28 C.F.R. § 523.41(c)(4). An inmate is not considered to be "successfully participating" in the following situations: (i) "[p]lacement in a Special Housing Unit;" (ii) "[d]esignation status outside the institution (e.g., for medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);" (iii) "[t]emporary transfer to the custody of another Federal or non-Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.);" (iv) "[p]lacement in mental health/psychiatric holds; or" (v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau

has recommended based on the inmate's individualized risk and needs assessment)." *Id.* §§ 523.41(c)(4)(i)–(v).

### B. Habeas Corpus Relief

"Petitions under § 2241 are used to attack the execution of a sentence[.]" *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (citation omitted). Habeas corpus relief is warranted where the petitioner shows he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In reviewing the action of a federal agency, such as the BOP, an agency's interpretation of ambiguous statutes is no longer entitled to deference. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261–63 (2024) (overruling *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). The Administrative Procedure Act requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority. *Id.*

### III. DISCUSSION

Mr. Puana contends that the BOP's current "policy and calculations" concerning FSA earned time credits "are incorrect and in clear conflict with 18 USC § 3632." ECF No. 1 at 5. Mr. Puana argues that he has been denied earned time credits under the FSA, even though he has "completed multiple adult continuing education classes including but not limited to email skills, computer skills, accounting, body health, and others." *Id.* He completed these activities between the date service of his sentence commenced (September 12, 2022) and the date he arrived at his designated facility (July 14, 2023).

Based on the Court's review of Mr. Puana's "Inmate History Education" printout provided by the BOP, he participated in eight activities during this period. *See* ECF No. 15-1 at 55. The Court will refer to these eight activities as the "Disputed Activities."

The activities are disputed because, according to the BOP, Mr. Puana did not "successfully participate" in them. ECF No. 15 at 8–12. The BOP maintains that "[s]uccessful participation requires an inmate to participate in EBRR programming and PAs that the BOP has recommended based on the inmate's individualized risk and needs assessment." *Id.* at 8 (citing 28 C.F.R. § 523.41(c)(2)). Yet Mr. Puana "did not receive his risk and needs assessment until he arrived at his designated facility on July 14, 2023," and therefore "he did not have successful participation in EBRR programming and PAs that he took prior to that date." *Id.*

The first issue is whether Mr. Puana was eligible to earn time credits for the period of September 12, 2022, to July 14, 2023, where he completed the Disputed Activities at FDC Honolulu, even though he had yet to arrive at his "designated facility" or receive his first PATTERN assessment. The Court finds that Mr. Puana cannot be denied earned time credits for EDDRs or PAs he completed while at FDC Honolulu, even though that was not his designated facility and he had not yet received his first PATTERN assessment.

First, the Court is not persuaded that Mr. Puana could not "successfully participate" in programing merely because FDC Honolulu was not his designated facility or because the BOP had not yet completed his individualized risk and needs assessment. The FSA

8

does not place these limits on a prisoner's eligibility to earn time credits or constrain the BOP's ability to review a prisoner's programing completed across separate BOP facilities at different points in time. *Jackson v. Doerer*, No. 5:24-01353-ADS, 2024 WL 4719489, at *9 (C.D. Cal. Nov. 7, 2024) (rejecting the BOP's denial of earned time credits for programming completed while prisoner was not at his "designated facility"). Section 523.41(c)(2) merely states: "'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." 28 C.F.R. § 523.41(c)(2). The BOP can make these determinations before or after an inmate has completed an EBRR or PA. Nor does the BOP claim that the Disputed Activities were non-recommended or non-compliant.

Second, the FSA provides that earned time credits are available for successfully completed programing unless that programming is completed (1) "prior to the date of enactment of this subchapter"; (2) "during official detention prior to the date that the prisoner's sentence commences under section 3585(a)"; or (3) the prisoner is disqualified based on his conviction or is subject to a final order of removal. *See* 18 U.S.C. §§ 3632(d)(4)(B), (D), (E). None of these disqualifications apply to Mr. Puana. He does not seek credit for programming completed before the FSA was enacted, does not seek credit for programs completed prior to the commencement of his sentence, and is not disqualified based on his conviction or for being subject to a final order of removal. The

9

FSA therefore mandates that Mr. Puana "shall" earn time credits for any successfully completed programming while in BOP facilities. 18 U.S.C. § 3632(d).

Courts across the country have reached the same conclusion, rejecting the BOP's regulatory interpretations that add eligibility conditions on top of those specified in the statute. Unless another exclusion applies, federal prisoners are eligible to begin earning FSA credits on the date their sentence commences under 18 U.S.C. § 3585(a). *See Yufenyuy v. Warden*, FCI Berlin, 659 F. Supp. 3d 213, 218 (D. N.H. 2023) (concluding that "the plain language of the FSA, and of § 3585(a), clearly establishes the date upon which the FSA must allow prisoners to start earning FSA time credits"); *Patel v. Barron*, No. C23-937-KKE, 2023 WL 6311281, at *5 (W.D. Wash. Sept. 28, 2023) (finding that "the FSA is unambiguous as to when a prisoner can and cannot earn time credits"); *Huihui v. Derr*, No. 22-00541 JAO-RT, 2023 WL 4086073, at *5 (D. Haw. June 20, 2023) (finding that "Congress has directly spoken to the precise question of *when* a prisoner is ineligible for FSA ETCs"); *Pelullo v. FCC Coleman - Low*, No. 5:23-CV-189-WFJ-PRL, 2024 WL 3771691, at *3 (M.D. Fla. Aug. 13, 2024) (same).

The BOP makes several arguments in opposing Mr. Puana's habeas application. It first contends that Mr. Puana was "eligible," but not in "earning status," while he was at FDC Honolulu because that prison was not his designated facility, he had yet to complete his PATTERN assessment, and thus could not "successfully participate" in any EDDRs or PAs until after the BOP completed the assessment. ECF No. 15 at 8–12. Second, the BOP argues that Mr. Puana's risk and needs assessment was timely "because his initial

assessment was completed within twenty-eight days of his arrival [at his designated facility], and he was reassessed at least every 180 days after that." *Id.* at 8–9, 12–15 (citing 28 C.F.R. § 523.11). Neither argument carries the day.

To start, the BOP insists that federal prisoners can be "eligible" for earned time credits but just "not in earning status." This is not a meaningful distinction. For federal prisoners seeking earned time credits, to be considered "not in earning status" has the same practical effect of deeming them "ineligible." But, as discussed above, federal prisoners are eligible to earn time credits for EDDRs and PAs starting from the date their sentence commences, which, in this case, the parties agree was September 12, 2022. The BOP's interpretation of § 523.41(c)(2) provides for a different date as the date when Mr. Puana could begin to earn FSA time credits—specifically, when he arrived at his designated facility. Such an interpretation directly contradicts the statutory text because it marks July 14, 2023, as the earliest date in which Mr. Puana could begin earning time credits. Again, the FSA mandates that Mr. Puana "shall" earn time credits for any completed programming while in BOP facilities after the date his sentence commenced. 18 U.S.C. § 3632(d).

In their surreply, the BOP also notes that the statute does not specify a timeframe in which the PATTERN assessment of a prisoner must take place. ECF No. 19 at 1–2. And, the BOP continues, there are good reasons for conducting the assessments once an inmate arrives at their designated facility. *Id.* at 2. For example, some inmates are held at non-BOP facilities prior to arriving at their designated facility, and an inmate's unit team

is in the best position to determine and monitor the program needs of an inmate. *Id.*

There may be good reasons for a PATTERN assessment to not take place until inmates arrives at their designated facility. The Court recognizes that circumstances may prevent the BOP from immediately assessing prisoners on the day their sentence commences. Yet that is beside the point. The issue is whether the cost of the delay should be borne by the prisoner. It should not. There is no gap in the statute as to the date when FSA time credits are available—prisoners are eligible when their sentence commences under 18 U.S.C. § 3585(a). *Yufenyuy*, 659 F. Supp. 3d at 218 (D. N.H. 2023) (recognizing that there is "no gap in the statute, with respect to when a prisoner is ineligible to earn FSA time credits," and concluding that a prisoner is entitled to begin earning FSA time credits as of the date their sentence commences). In this case, there was a ten-month gap between the date Mr. Puana began serving his sentence at FDC Honolulu and the date he arrived at his designated facility, FCI Englewood. He should not be denied earned time credits for EBRRs or PAs he completed while serving his federal sentence at a BOP facility. Again, none of the statutory disqualifications apply to Mr. Puana. *See* 18 U.S.C. §§ 3632(d)(4)(B), (D), (E).

Moreover, the BOP itself backdated Mr. Puana's "earning status" from July 25, 2023 (the date his risk and needs assessment was actually completed) to July 14, 2023 (the date he arrived at his designated facility). No reason is proffered as to why the BOP cannot simply backdate Mr. Puana's eligibility date to September 12, 2022 (the date he began serving his federal sentence). And nowhere has the BOP claimed that the Disputed

Activities failed to meet the substantive requirements of each particular program or activity. Nor has the BOP claimed that the unit team at FCI Englewood is unable to determine whether the Disputed Activities meet the requirements of each EBRR or PA.

Finally, the BOP argues that "it would actually contravene the [FSA] to allow inmates to earn credits for activities they participated in prior to completing their individualized needs and risk assessments, as required by the [FSA]." ECF No. 19 at 3-4. The Court disagrees. The purpose of the FSA is to incentivize and reward successful participation in EBRRs and PAs. *See* 18 U.S.C. § 3632(a). Whether the EBRRs and PAs are completed before or after a prisoner arrives at a designated facility, or whether the activities are completed before or after the prisoner is assessed, the purpose of the FSA is furthered by rewarding and incentivizing participation in these activities. Denying Mr. Puana FSA credits in this case for activities completed while serving ten months of his federal sentence at a federal facility would neither incentivize nor reward his participation in these activities.

## IV.  CONCLUSION

For these reasons, the BOP may not deny Mr. Puana earned time credits for programming or activities (the Disputed Activities) he completed after his sentence commenced while housed in BOP facilities. To deny Mr. Puana earned time credit for these activities because he had yet to arrive at his designated facility or be assessed by the BOP, conflicts with the FSA's statutory eligibility provisions. Within 30 days, the BOP is ordered to recalculate Mr. Puana's earned time credits under the FSA, giving him credit

for any EBRR program or PA he has completed that complies with the requirements of each particular program or activity from September 12, 2022, when he began serving his sentence, to the present. The BOP is further ordered, within 30 days, to recalculate Mr. Puana's assessment periods, with the first assessment period commencing *nunc pro tunc* as of September 12, 2022.

It is therefore

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1, is **GRANTED IN PART** as stated herein. It is

FURTHER ORDERED that Mr. Puana's Motion for FSA Time Credit Recalculation, ECF No. 20, is **DENIED** as moot.

DATED this 2nd day of December 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge